

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF FLORIDA
ORLANDO DIVISION**

2016 MAR -7 PM 3: 54

MIDDLE DIST
ORLANDO, FL

)
)
BENJAMIN HELLER, individually and on behalf )
of others similarly situated, )
)  Case No. 6 16-CV-396-ORL-31GJK
Plaintiff, )
)
v. )
)  **CLASS ACTION COMPLAINT**
UNIVERSITY OF CENTRAL FLORIDA )
BOARD OF TRUSTEES d/b/a UNIVERSITY )
OF CENTRAL FLORIDA, )  **JURY TRIAL DEMANDED**
)
Defendant. )
)
)
)
_____ )

Plaintiff, individually and on behalf of all other persons similarly situated, alleges the

following claims against the University of Central Florida Board of Trustees ("Board"), d/b/a the

University of Central Florida ("UCF"), based upon personal knowledge with respect to himself and

his own acts and upon information and belief as to all other matters derived from, among other

things, investigation of counsel including review of publicly available documents and information.

## INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiff individually and on behalf of

approximately 63,000 similarly situated present and former UCF students and employees arising

from the improper access and taking of their confidential personally identifiable information

("PII") including, among other things, each of their Social Security numbers linked with their

first and last names that UCF stored but failed to safeguard on its computer system.

2.     According to a Social Security Administration ("SSA") pamphlet titled "Identity Theft and Your Social Security Number", your Social Security number is confidential. "The Social Security Administration protects your Social Security number and keeps your records confidential. We don't give your number to anyone, except when authorized by law. *You should be careful about sharing your number, even when you're asked for it.*" The SSA pamphlet warns, "Be careful with your Social Security card and number. Keep your card and any other document that shows your Social Security number in a safe place.

3.     The SSA pamphlet further states that a hacker that has obtained:

> your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.

4.     The Plaintiff provided his Social Security number to UCF with the understanding and expectation that UCF would keep that Social Security number confidential.

5.     The confidentiality of his Social Security number and other PII had real economic value to the Plaintiff and class members.

6.     In fact, stolen Social Security numbers, particularly when connected with a Social Security cardholder's name and other identifying information, have cash value on the black market.

7.     Loss of confidentiality of one's Social Security number is a lifelong, expensive and potentially devastating problem.

2

8. The consequences of identity theft can be staggering. Victims spend extensive time closing bad accounts, opening new ones, and fixing credit records. There can be high out-of-pocket expenses related to clearing your name. Victims could be denied loans and jobs.

9. Identity thieves frequently open new accounts in a victim's name. They often apply for new credit cards using a victim's information, make charges, and leave the bills unpaid. It is also common for them to set up telephone or utility service in a victim's name and not pay for it. Some victims have found that identity thieves applied for loans, apartments, and mortgages. Thieves have also been known to print counterfeit checks in a victim's name.

10. In its article titled, "Here's Why Your Social Security Number Is Holy Grail for Hackers" Bloomberg Business reported that Social Security numbers issued by the U.S. government typically follow people from birth to death. Unlike payment-card numbers that can be canceled, a Social Security number is ubiquitous and hard to change. It is used as the main authentication mechanism for many essential services, especially ones provided by the government.

11. On February 11, 2015, National Public Radio reported that getting a new Social Security number requires a lot of paperwork, including evidence of problems caused by misuse. Even then, according to Julie Fergerson, chair of the Identity Theft Resource Center, a new number is not always helpful. "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number," she says. "So even when you go through the painful effort of doing it, it really doesn't help the victim of identity theft."

12. The loss of confidentiality of the Plaintiff's and other class members' Social Security numbers and other PII is a direct and foreseeable consequence of UCF's failure to

maintain adequate security for such information stored on its computer systems. The confidentiality of Plaintiff's and class members' PII has been taken from them and that PII is now in the hands of criminals.

13.     The one year of free credit monitoring and identity protection services which customers must take affirmative steps to obtain does not compensate Plaintiff and the other members of the class for the lifelong burden UCF's improper conduct has caused them to incur. Among other things, one year of free credit monitoring and identity protection is wholly inadequate. The coverage provided is very limited. For example, UCF offers no coverage for the expense of paying one's own attorney to investigate and/or resolve issues related to identity theft or related misconduct.

14.     Plaintiff, individually and on behalf of the members of the putative class he seeks to represent, assert claims against Defendant, for violation of various state consumer and data breach laws, negligence, breach of implied contract and federal educational and privacy law. Plaintiff seeks to recover damages, including actual and statutory damages and costs and reasonable attorney's fees.

15.     In addition, Plaintiff and other members of the class seek to enjoin UCF from storing their PII on its computer system without undertaking and completing steps necessary to assure that such PII is safeguarded from further intrusion, access and improper taking by cyber criminals.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to 28 U.S. Code § 1331, as claims are asserted under Negligence *Per Se* pursuant to violations of the Federal Educational

4

Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; 34 C.F.R. 99. This Court has supplemental jurisdiction over the alleged state law claims pursuant to 28 U.S.C. § 1367(a).

17. UCF maintains its principal place of business at 4000 Central Florida Blvd, Orlando, FL 32816. The Defendant regularly conducted business in Florida and has intentionally availed itself to this jurisdiction by marketing and selling services and products from Florida to thousands of consumers nationwide, including customers in Florida.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2). UCF maintains its principal place of business in this District; a substantial portion of the transactions, acts, events, and omissions alleged herein occurred in this District; and Defendant received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

19. Plaintiff Benjamin Heller ("Heller") is over 18 years of age and is a resident of Cary, North Carolina and paid valuable consideration to UCF in exchange for educational products or services offered by UCF. As a UCF student, Heller provided his PII to UCF which upon information and belief was stored on UCF's computer system. On or about January 2016, Heller's PII stored on UCF's computer system was improperly accessed by unauthorized intruders or hackers.

20. Defendant the Board, by its members, serves as the UCF's legal owner and final authority responsible for efficient and effective use of resources.

21. According to the Fifth Amended and Restated Bylaws of the Board, dated September 26, 2013 ("Bylaws"), Section 2.3 (Powers and Duties of the Board) states:

> The Board shall serve as the governing body of the University of Central Florida. It shall select the president of the University of Central Florida for ratification by

the Board of Governors and shall hold the president responsible for the university's operation and management, performance, fiscal accountability, and compliance with federal and state laws and rules of the Board of Governors. The Board shall have the authority to carry out all lawful functions permitted by the bylaws, its operating procedures, by rules and policies of the Board of Governors, or by law.

The Board may adopt rules and policies consistent with the university mission, with law, and with the rules and policies of the Board of Governors, in order to effectively fulfill its obligations under the law.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Federal Rules of Procedure 23(a) and (b)(3) on behalf of himself and all others similarly situated, consisting of all persons or entities who have had personal or financial data stolen from Defendant's computer network, and who were damaged thereby (the "Class").

23.     Excluded from the Class are Defendant and their officers and directors, agents, employees, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest.

24.     The members of the Class are so numerous that joinder of all members *is* impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff are informed and believe that approximately 63,000 individuals were affected by the data breach.

25.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct.

26.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

6

a.      whether Defendant acted wrongfully by failing to properly safeguard the personal or financial information of individuals affected by the data breach;

b.      whether Defendant's conduct violated law;

c.      whether Defendant failed to notify Class members of the data breach as soon as practical after the breach was discovered;

d.      whether Plaintiff and the other members of the Class have been damaged, and, if so, what is the appropriate relief; and

e.      whether Defendant breached implied contracts with Plaintiff and Class members by failing to properly safeguard their private and confidential personal and/or financial data.

27.      Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other members of the Class each sustained damages and/or were negatively affected by Defendant's wrongful conduct as complained of herein.

28.      Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel highly competent and experienced in class action and complex litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

29.      Class action status in this action is warranted under Rule 23 because prosecution of separate actions by the members of the Class would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

30.      This forum is appropriate for litigation of this action since a substantial portion of the transactions, acts, events, and omissions alleged herein occurred in this District.

31.     Plaintiff anticipates no difficulty in the management of this litigation as a class action.

32.     The Class is readily definable, and prosecution as a class action will eliminate the possibility of repetitions litigation, while also providing redress for claims that may be too small to support the expense of individual complex litigation.

33.     For these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FACTUAL ALLEGATIONS

34.     UCF was founded in 1963 and is Florida's largest university and the second largest university in the nation based on enrollment, comprised of 13 colleges and 210 degree programs. About 61,000 students currently enrolled at UCF from 50 states and 148 countries.

35.     In connection with enrolling and taking classes at UCF, students are required to provide UCF with PII (such as their Social Security number) which UCF thereafter retains and stores in electronic databases on its computer system.

36.     The UCF Division of Information Technologies & Resources, Information Security Office is responsible for computer system security of restricted personal information.

37.     UFC policy defines restricted personal information as a person's first name or first initial and last name in combination with data elements such as Social Security number when the data elements are *not encrypted*.

38.     If a data security breach of restricted personal data (or PII) stored on the UCF computer system is suspected, the College, Department of Business Unit responsible for the affected data is to immediately inform the Information Security Office and the Security Incident Response Team assigned to the breach.

39.     The Information Security Office then reports the breach to the Vice Provost for Information Technology and Resources, which in turn notifies the UCF executives (President, Vice Presidents and General Counsel's Office, etc.

40.     The UCF executives then determine whether the breach involves the acquisition of personal information by an unauthorized person and whether to notify persons affected.

41.     The UCF policy notes that Florida state statutes define security "breach" and "breach of the security of the system" as "the unlawful and unauthorized acquisition of computerized data that materially compromises the security, confidentiality, or integrity of personal information maintained by the person [UCF]."

42.     The procedures for notice of a data security breach include, press release, posting on a UCF website and U.S. mail.

43.     UCF detected the breach on January 8, 2016 according to a February 4, 2016 New York Daily News article.

44.     A UCF Police Department Incident Report, case number 2016-0534, dated February 2, 2016 ("Police Report"), and subsequently posted on a UCF webpage, www.ucf.edu/datasecurity/, states that "In January 2016, UCF discovered a recent intrusion into UCF's computer network which compromised the [PII] of come members of the [UCF] Community." The Police Report indicates that the intrusion occurred *throughout the month of January*. The Police Report further states that UCF commenced an investigation and that law enforcement officials are currently investigating the source of the intrusion.

45.     On February 4, 2016, UCF publicly disclosed that the confidentiality of certain UCF students and/or employees PII was compromised as a result of an intrusion into the UCF computer network by cyber criminals. Specifically, UCF stated an "outside intrusion into

9

[UCF's] computer network compromised the [PII] of some members of our university community."

46. UCF's February 4 2016 statement revealed that as *of that date*, its internal investigation, "has indicated unauthorized access to Social Security numbers. . . for approximately 63,000 current and former [UCF] students and staff and faculty members."

47. In addition to names and Social Security numbers, number of academic credit hours earned, student identification numbers and employee identification numbers were compromised.

48. There has been no announcement by UCF that its investigation is complete or that the estimated number of current and former UCF students and employees whose PII was compromised will not rise as the investigation continues.

49. The Police Report states that disposition of the investigation remains "open."

50. A UCF posting on www.ucf.edu/datasecurity/ states "We are mailing notices to individuals who may have been affected by the incident *so they can take steps to safeguard their personal information going forward.* (Emphasis added) UCF further warns:

> we recommend that you carefully check credit reports for accounts or inquiries you do not recognize. If you see anything you do not understand, call the credit agency immediately. If you find any suspicious activity on the credit reports, call your local police or sheriff's office, and file a police report for identity theft and get a copy of it. You may need to give copies of the police report to creditors to clear up credit records.

> We also recommend that you carefully review credit and debit card account statements as soon as possible in order to determine if there are any discrepancies or unusual activity listed. You should remain vigilant and continue to monitor statements for unusual activity going forward. If you see anything you do not understand or that looks odd, or if you suspect that any fraudulent transactions have taken place, you should call the bank that issued the credit or debit card immediately to let them know what happened.

51.     UCF goes on to say in its web posting: "We regret any inconvenience or stress this incident may cause . . ." UCF says that it will use the intrusion of its students' and employees' PII as "an opportunity to educate our campus community about how to protect information and identities in a variety of online situations."

52.     UCF could have undertaken safeguards (such as encrypting Social Security numbers and other PII stored on its computer system), *before the intrusion*, so to maintain the confidentiality of its students' and employees' PII, including enhancing user account and password security and expanding campus-wide information security education and training, the steps UCF claims to be commencing now. Coincidentally, it was not until "late 2015" that that "information security became part of employee orientations [at UCF]."

53.     UCF was aware that PII stored on its computer system was at risk. UCF's February 4, 2016 statement acknowledges that "Every day, people and groups attempt to illegally access secure data from institutions around the world. Higher education institutions are popular targets."

54.     Despite learning of the data breach on January 8, 2016, the UCF website states that the UCF is "notifying those impacted by the incident via letters that should be received the week of February 8 [2016]." A February 4, 2016 article published in the Orlando Sentinel, titled "Hack at UCF compromises 63,000 Social Security numbers," reported that "The people whose information has been compromised have not been notified yet. The University will alert them by letters that are expected to be sent Friday [February 5, 2016], officials said."

## COUNT I

### Negligence

55.     Plaintiff realleges and incorporates by reference each allegation contained in all preceding paragraphs of this Complaint as though set forth fully herein.

56     This count is brought against Defendant by Plaintiff individually, and on behalf of the Class.

57.     Defendant owed a duty to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting personal and financial information in their possession from being compromised, lost, stolen, accessed and misused by unauthorized persons. This duty included, among other things, designing, maintaining, and testing the UCF computer system security to ensure that Plaintiff's and the other Class members' PII in UCF's possession were adequately secured, protected *and encrypted*.  UCF further owed a duty to Plaintiff and the other members of the Class to implement processes that would detect a breach of its security system in a timely manner and to timely act upon warnings and alerts, including those generated by its own security systems.

58.     Defendant owed a duty to Plaintiff and the other members of the Class to provide security consistent with industry standards and requirements, to ensure that UCF's computer systems and networks, and the personnel responsible for them, adequately protected the PII of Plaintiff and the other members of the Class who provided their Social Security numbers to UCF in connection with enrolling as a UCF student, taking UCF classes and/or working for UCF.

59.     Defendant owed a duty to timely and accurately disclose to Plaintiff and the other Class members that their PII had been or was reasonably believed to have been compromised. Timely disclosure was required, appropriate and necessary so that, among other things, Plaintiff

and the other Class members could begin to take appropriate measures to avoid unauthorized use of their PII, cancel or change usernames and passwords and take other steps to mitigate damages caused by Defendant's misconduct.

60.     Plaintiff and the other members of the Class entrusted UCF with their PII, on the premise and with the understanding that UCF would safeguard their information and UCF was in a position to protect against the harm suffered by Plaintiff and the others members of the Class as a result of the data breach.

61.     Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the other members of the Class by, among other things, neglecting to encrypt PII stored on the UCF computer system.

62.     Defendant breached the duties owed to Plaintiff and the other members of the Class by failing to exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of the Plaintiff and other members of the Class.

63.     Defendant breached the duties owed to Plaintiff and the other members of the Class by failing to properly implement technical systems or security practices that could have prevented the loss of the data at issue.

64.     Defendant, in the absence of negligence, should have known that Plaintiff and the other members of the Class were foreseeable victims of a data breach of its systems because of laws and statutes that require UCF to reasonably safeguard sensitive personal information.

65.     By their acts and omissions described herein, Defendant unlawfully breached this duty.

66.     Plaintiff and the other members of the Class were damaged by Defendant's breach of this duty.

13

67.     The PII that was compromised by the breach included, without limitation, information that was being improperly stored and inadequately safeguarded by Defendant. The breach of security was a direct and proximate result of the Defendant's failure to use reasonable care to implement and maintain appropriate security procedures (such as encryption) reasonably designed to protect the Social Security number information and other nonpublic information of Plaintiff and the other members of the Class. This breach of security and unauthorized access to the private, nonpublic information of Plaintiff and the other members of the Class was reasonably foreseeable.

68.     Defendant were in a fiduciary relationship with Plaintiff and the other members of the Class by reason of its entrustment with sensitive PII and other nonpublic information. By reason of this fiduciary relationship, the Defendant had a duty of care to use reasonable means to keep nonpublic information of the Class private and secure. The Defendant also had a duty to inform Class members in a timely manner when their sensitive nonpublic information became compromised. Defendant has unlawfully breached these duties.

69.     The compromise of the Plaintiff's and the other Class members' PII, and the resulting burden, fear, anxiety, emotional distress, loss of time spent seeking to prevent or undo any further harm, and other economic and non-economic damages to Plaintiff and the other members of Class, were the direct and proximate result of Defendant's violation of its duty of care.

70.     Defendant had a duty to timely disclose the data compromise to all individuals whose sensitive non-public information was, or was reasonably believed to have been, accessed by unauthorized persons. Disclosure was required so that, among other things, the affected customers could take appropriate measures to avoid unauthorized use of their information and

monitor their identity information for fraudulent activity. The Defendant breached this duty by failing to notify Plaintiff and the other Class members in a timely manner that their information was compromised. The Plaintiff and the other Class members were harmed by Defendant's delay.

71.     Defendant knew or should have known that UCF's network for processing and storing sensitive private information had security vulnerabilities. The Defendant was negligent in continuing such data processing and storage in light of those vulnerabilities and the sensitivity of the data.

72.     As a direct and proximate result of the Defendant's conduct, Plaintiff and the other members of the Class suffered damages including, but not limited to, loss of control of their personal financial information; fear and apprehension of fraud, loss of money, and identity theft; loss of privacy; and other economic and noneconomic damages.

## COUNT II

### Negligence *Per Se*

73.     Plaintiff realleges and incorporates by reference each allegation contained in all preceding paragraphs of this Complaint as though set forth fully herein.

74.     This count is brought against Defendant by Plaintiff individually, and on behalf of the Class.

75.     Pursuant to FERPA (20 U.S.C. § 1232g; 34 CFR Part 99), Defendant had a duty to keep and protect the PII of the Plaintiff and other members of the Class.

76.     Defendant violated FERPA by failing to adequately protect and maintain the confidentiality of Plaintiff's and Class members' PII.

77. Defendant's failure to comply with the FERPA, and/or other industry standards and regulations, constitutes negligence per se.

78. Defendant's negligence per se has caused damage to Plaintiff and Class members.

## COUNT III

### Breach of Implied Contract

79. Plaintiff realleges and incorporates by reference each allegation contained in all preceding paragraphs of this Complaint as though set forth fully herein.

80. By providing Plaintiff's and the other Class members' PII to UCF in order to enroll as a UCF student, take UCF classes and/or work for UCF, Plaintiff and the other Class entered into implied contracts with UCF pursuant to which UCF agreed to safeguard and protect such PII and to timely and accurately notify Plaintiff and the other Class members that their PII had been breached and compromised.

81. Defendant solicited and invited Plaintiff and the other members of the Class to enroll as a UCF student, take UCF classes and/or work for UCF. Plaintiff and the other members of the Class accepted UCFs offers and provided their sensitive personal information.

82. Transactions between Plaintiff and the other members of the Class and UCF were made pursuant to the mutually agreed upon implied contract with UCF.

83. Plaintiff and the other members of the Class fully performed their obligations under the implied contracts with UCF.

84. Defendant breached the implied contracts it had made with the Plaintiff and the other members of the Class by failing to safeguard and protect their PII, and by failing to provide timely and accurate notice to them that their PII was compromised in and as a result of the data breach.

85. The losses and damages sustained by Plaintiff and the other Class members as described herein were the direct and proximate result of the Defendant's breaches of these implied contracts.

## COUNT V

### Conversion

86. Plaintiff realleges and incorporates by reference each allegation contained in all preceding paragraphs of this Complaint as though set forth fully herein.

87. This count is brought against Defendant by Plaintiff individually, and on behalf of the Class.

88. Plaintiff and members of the Class were owners and possessors of their PII. As a result of Defendant' wrongful conduct, Defendant have interfered with Plaintiff's and Class members' rights to possess and control their PII, to which they had a superior right of possession and control at the time of conversion.

89. Plaintiff and the Class members did not consent to Defendant' mishandling and loss of their PII.

90. As a direct and proximate result of Defendant' conduct, Plaintiff and the members of the Class suffered injury, damage, loss or harm and thus seek compensatory damages.

## COUNT VI

### Bailment

91. Plaintiff realleges and incorporates by reference each allegation contained in all preceding paragraphs of this Complaint as though set forth fully herein.

92. This count is brought against Defendant by Plaintiff individually, and on behalf of the Class.

93. Plaintiff and Class members delivered and entrusted their PII to Defendant.

94. During the time of bailment, Defendant owed Plaintiff and members of the Class a duty to safeguard this information and maintain reasonable security procedures and practices. Defendant breached this duty.

95. As a result of Defendant' breaches of duty, Plaintiff and members of the Class have suffered harm.

96. Plaintiff seeks actual damages on behalf of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant named herein, as follows:

A. An order certifying the Plaintiff Class, determining that the action is a proper class action maintainable under Fed. R. Civ. P. 23, and appointing Plaintiff and his respective counsel to represent the Class as defined above;

B. Compensatory damages in an amount to be determined at trial and/or other appropriate relief;

C. Pre-judgment and post-judgment interest at the maximum rate allowable at law;

D. Equitable and injunctive relief enjoining Defendant from pursuing the policies, acts and practices described above;

E. Costs and fees incurred, including attorneys' fees and experts' fees and costs;

F. Such further legal and equitable relief as the court may deem proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury for all claims at law.

Respectfully submitted,

March 3, 2016

/s/ *Zachary West*
Zachary West
Florida Bar No.: 71134
P.O. Box 272789
THE BERMAN LAW GROUP
Boca Raton, Fl. 33427
service@thebermanlawgroup.com
zwest@thebermanlawgroup.com
Telephone: (561) 826-5200
Fax: (561) 826-5201


/s/ *Melissa Emert*
Melissa Emert
Patrick K. Slyne
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
memert@ssbny.com
pkslyne@ssbny.com
Telephone: (212) 687-7230